THE WILMINGTON AND SPRINGFIELD COAL COMPANY

*v.*

HUGH SLOAN *et al.*

*Opinion filed February 21, 1907.*

1. MINES—*negligence of vice-principal is the negligence of the master.* An employee of a mining company who is entrusted with the duty of looking after the conditions attending the proper ventilation of his section of the mine and the safety of the miners working therein, is, as to such duty, the vice-principal of the master, and his negligence in that regard is the negligence of the master.

2. FELLOW-SERVANTS—*when question of fellow-servants does not arise.* Where a certain person, on the day of an accident resulting in the death of a miner, is, in the absence of the regular man, performing the latter's duties with respect to the conditions attending the safety of the men, he is in that respect the representative of the master, and the question of fellow-servants is not in the case.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. J. A. CREIGHTON, Judge, presiding.

CONKLING & IRWIN, for appellant.

ROBERT H. PATTON, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellees recovered a judgment for $2500 against appellant for damages occasioned by the death of their son, William Sloan, by suffocation, while working in a coal mine

operated by appellant, August 5, 1904. The Appellate Court affirmed the judgment, and the case is appealed to this court.

The declaration alleges that the death of said William Sloan was caused by the negligence of appellant, first, in failure to keep careful watch over the ventilation of the mine; second, in failure to maintain sufficient currents of fresh air for the safety and health of the employees; and third, in failure to force sufficient currents of fresh air into the working parts of the mine to keep them reasonably free from standing smoke and deleterious air.

It appears that the deceased and Moses Secker, his co-worker,—called in mining parlance "buddy,"—were working as miners in adjoining rooms. Ventilation was furnished by currents of air forced through certain entries and back through others, and prevented from taking short cuts by various curtains of canvass or other cloth hung across the passages. Along in the middle of the afternoon a "trip" of empty cars, drawn by a mule and in charge of William Farrant, ran off the track and against the props supporting one of these curtains, tearing it down. This allowed the air current to take a short cut through that passage, practically cutting off the portion of the mine where the deceased and Secker were working, from the ventilation system. Shortly after the curtain was knocked down Farrant met Charles Cavanaugh, his "buddy," and requested him to find a track layer and request him to replace the curtain. Cavanaugh testified that he informed Edward Cartwright, a track layer's helper, and so requested him. Cartwright was afterwards seen at the place where the curtain was down, by Farrant, but did not repair it. There is evidence tending to show that he told Farrant that he could not fix it as he had no nails. He denies that he was asked to go and fix the curtain but admits that he saw Farrant there, and admits that earlier he heard someone shouting, not knowing whether it was Farrant or Cavanaugh, that the curtain was down. About four o'clock that afternoon Secker and the deceased

commenced firing the shots in their respective rooms, and had fired four of the five when both were overcome by the smoke and bad air, deceased being suffocated, while Secker managed to drag himself, as well as deceased, some distance along the entry before becoming unconscious, and only revived after several hours.

There is practically no question but that deceased came to his death by reason of the smoke and bad air caused by the firing of the shots, and that the smoke and bad air were not drawn out, as they would otherwise have been, because the falling of the curtain and the failure to repair the same interfered with the proper ventilation of these rooms and entries or passages.

The first contention of appellant is, that the trial court erred in refusing to take the case from the jury at the close of the evidence. The evidence was conflicting, but fairly tended to show that the death was caused by the negligence of appellant. The court, therefore, properly submitted the case to the jury.

It is earnestly insisted that the notice to Cartwright of the condition of the curtain was not notice to appellant, and that his failure to repair it cannot be held to be a willful violation on the part of appellant of the requirements of the statute. If Edward Cartwright was acting as vice-principal of appellant with reference to the repair of this curtain, then there can be no question that the failure of appellant to repair the curtain was conscious and willful, within the meaning of the statute. *Taylor Coal Co.* v. *Dawes,* 220 Ill. 145; *Donk Bros. Coal Co.* v. *Peton,* 192 id. 41.

It is insisted that Edward Cartwright was a fellow-servant of the deceased and was not a vice-principal of the appellant with respect to the performance of the duties when notice was given to him that the curtain needed repairing. Edward Cartwright was assistant to his brother, William, the latter being in charge of track repairing and other repairs in that section of the mine. William was not at work on

the day of the accident and Edward was looking after this work alone. In the performance of such administrative duties he did not act as a fellow-servant, and the question is not in this case.

As the record stands, the judgment of the Appellate Court affirming that of the lower court is conclusive upon this court. The judgment must be affirmed.

*Judgment affirmed.*